UNITED STATES of America, Plaintiff-Appellee,

v.

Kenneth LANDRY, Defendant-Appellant.

No. 12268.

United States Court of Appeals Seventh Circuit.

July 30, 1958.

Frank W. Oliver, Melvin B. Lewis, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Burton M. Bergstrom, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

Kenneth Landry, appellant, and Cameron E. Judkins were jointly charged in an eight-count indictment with as many violations of the Narcotic Control Act. Four separate quantities of narcotic drugs are involved. Counts 1, 2 and 3 relate to 14½ grains of heroin hydrochloride. Count 1 alleges its purchase in violation of Sec. 4704(a) of the Internal Revenue Code of 1954 (Title 26 U.S.C.A. Sec. 4704(a)), as amended by the Narcotic Control Act of 1956. Count 2 alleges the sale of the same narcotic to Senn Moses for the sum of $15.00, in violation of Sec. 4705(a). Count 3 alleges the receipt, concealment, purchase, sale and facilitating the transportation of the same narcotic, in violation of Sec. 174 (Title 21 U.S.C.A. Sec. 174), as amended by the Narcotic Control Act of 1956. Counts 4, 5 and 6 allege the same violations as counts 1, 2 and 3, except that they refer to a different transaction. Count 7 alleges that defendants purchased 16½ grains of heroin hydrochloride, and count 8, that defendants received, concealed, purchased and facilitated the transportation of the same narcotic.

Judkins pled guilty and is not involved on this appeal. The charge against Landry was tried by a jury which returned a verdict of not guilty on counts 2 and 5, which alleged sales, and guilty as alleged in counts 1, 3, 4, 6, 7 and 8. The Court sentenced Landry to imprisonment for a period of eight years on each of

counts 3, 6 and 8, and for a period of two years on each of counts 1, 4 and 7, to be served concurrently. From this judgment Landry appeals.

The grounds urged here for reversal are not the same as to all counts. As to counts 1, 3, 4 and 6, Landry invoked the defense of entrapment. On this phase of the appeal, it is argued that the Court refused the admission of proper evidence offered on behalf of Landry and erroneously instructed the jury. It is urged as to these counts that this Court should sustain the defense of entrapment as a matter of law or, in the alternative, grant a new trial because of the asserted prejudicial errors. The defense of entrapment is not involved as to counts 7 and 8. Admittedly, the government's case on these counts rests entirely upon its asserted proof of possession by Landry of the described narcotics. Landry contends that the proof was insufficient for this purpose and that the Court erred in its failure to direct a verdict.

We shall first consider the defense of entrapment, concerning which many cases are called to our attention by the parties. Most of these cases lose their importance in view of two recent decisions of the Supreme Court, both decided May 19, 1958. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, and Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. In the former case, the Court cites and discusses not only its previous decisions but those of other courts. It reversed the Court of Appeals for the Second Circuit which had affirmed a narcotic conviction, and held as a matter of law that entrapment had been established. In the Masciale case, the Court held that the issue of entrapment had been properly submitted to the jury and affirmed a conviction. That the issue engenders confusion both in its substantive and procedural aspects is evidenced from the opinions of the Supreme Court in these two recent cases where the Court in each was divided five to four. In the Sherman case, the minority concurred in the view that entrap-

ment had been shown as a matter of law, but upon reasoning and logic essentially different from that of the majority. In the Masciale case, the minority dissented upon the basis that the issue of entrapment should not be submitted to a jury but should be decided by the trial judge.

The issue of entrapment was raised and was recognized by the trial Court in its submission of the issue to the jury. We are not convinced that entrapment was shown as a matter of law, although the testimony of Landry standing alone would require such a holding. On the other hand, the testimony of informer Moses, the government's chief witness, approaches but falls short, so we think, of the facts in the Sherman case upon which the Supreme Court sustained entrapment as a matter of law. Considering all the testimony, as we must, we think a jury issue was presented. At the same time, we think the nature of the proof was such as to require that the issue be adequately and correctly submitted to the jury.

Prior to a consideration of the instructions of which defendant complains, it appears appropriate to relate a brief résumé of the testimony of informer Moses for the government and that of Landry in his own behalf. Moses, a Chicago police officer, was interested in locating Billy Thurmond (sometimes called Nick), to whom he had given $15.00 for the purpose of purchasing narcotics. Nick failed to deliver as promised and Moses placed numerous telephone calls in an effort to learn of his whereabouts. One of such calls was answered by Landry. Moses explained to Landry his trouble with Nick. In this conversation Landry stated that he might be able to help. This was Moses' first contact with Landry. Thereafter, Moses called Landry a number of times and, on November 28, 1956, Landry agreed to purchase for Moses a quantity of heroin for $15.00. Moses supplied the money and Landry made the purchase from a person unknown to Moses (subsequently identified as Judkins, jointly indicted

with Landry), and on the following day it was delivered by Landry to Moses in the former's apartment. (This transaction forms the basis for counts 1, 2 and 3.) At the same time, Landry, at Moses' request, agreed to purchase for Moses ¼ ounce of heroin for $50.00, which was done and which was again delivered to Moses in Landry's apartment. (This transaction forms the basis for counts 4, 5 and 6.) Moses admitted on cross-examination that he represented to Landry that he wanted the heroin for a girl friend who was an addict, sick and without a source of supply. The witness stated, "That was my spiel," referring to what he told Landry in order to obtain the heroin. Moses' testimony shows that Landry reaped no profit from either transaction. However, Moses did claim that subsequent to the transactions he gave Landry a $5.00 bill, which appears to have been in the form of a gratuity for services rendered.

Landry testified that he was addicted to the use of narcotics and had, previous to the date of the alleged transactions, voluntarily committed himself to Lexington Federal Hospital for treatment of his addiction and had been treated at other hospitals for the same purpose. He testified that on November 29, 1956 (the date of the two transactions involved), he was living at 7312 Cottage Grove Avenue, in an apartment with Dolores Dandridge and baby, a Mrs. Barnes, mother of Dolores, and Billy (Nick) Thurmond, a brother of Dolores. Mrs. Barnes occupied one bedroom, Dolores and baby another, and the brother and Landry slept on a pull-out bed in the dining room. Landry testified that he had never been engaged in the drug business other than as an addict. He testified as to numerous telephone calls received from Moses, in which the latter repeatedly importuned him to obtain narcotics for Moses' sick girl friend who, he stated, was having convulsions, was very sick, needed help and might hurt herself without them. It was his sympathy for the plight of the girl that caused him to lend his assistance to Moses in procuring the heroin. Landry stated he realized no profit from either transaction and denied that Moses gave him a $5.00 bill for his services.

As noted, this is only a brief résumé of the testimony bearing upon the issue of entrapment but we think it sufficient to demonstrate the closeness of the proof on the issue for decision.

The Court instructed the jury:

" * * * you are instructed that if you believe from the evidence in this case that the defendant was entrapped, by a set of false and carefully arranged circumstances and other valid evidence apparently real, sufficient to deceive an ordinary person of defendant's age, knowledge and experience, into committing the crime charged against him, and that in the absence of such entrapment, the defendant never would have been guilty if the persons and officers had not inspired, incited, persuaded or lured him to attempt to do the unlawful acts of which he stands charged, you should find the defendant not guilty."

We think this instruction erroneous; certainly it was confusing. There was no issue as to what "an ordinary person of defendant's age, knowledge and experience" would have done under the circumstances. The issue was whether defendant was entrapped, not whether an ordinary person would have been. Nor was Landry's "knowledge and experience" in issue and, absent proof, it is not discernible how the jury could have evaluated the same.

The instruction just quoted, as well as others on the issue of entrapment, makes no attempt to allocate the burden of proof. This is emphasized by the instruction which states:

"Before you are justified in acquitting the defendant on the ground of entrapment, you must believe from the evidence that the prosecuting witnesses * * * lured the defendant to commit the acts charged."

The government in its brief states:

"In any event, the burden is upon the defendant to produce evidence that government agents induced him to commit the crime; only when such evidence has been brought out by the defendant must the government prove, beyond a reasonable doubt, that inducement was not the cause or creator of the crime."

Two cases are cited in support of this statement. United States v. Sherman, 2 Cir., 200 F.2d 880, 882, and United States v. Masciale, 2 Cir., 236 F.2d 601, 603, affirmed 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. In Masciale, the Court stated (at page 603):

"On the facts, we think it plain that this is a case in which both the sale and the conspiracy were induced by Marshall, a Government agent. That being so, the burden was on the Government, by way of reply to the defense of entrapment, to prove a sufficient excuse for the inducement."

The Sherman case [1], in different phraseology, announced the same rule.

The Supreme Court in Sherman recognized the same principle. It stated (356 U.S. at page 371, 78 S.Ct. at page 820):

"At trial the factual issue was whether the informer had convinced an otherwise unwilling person to commit a criminal act or whether petitioner was already predisposed to commit the act and exhibited only the natural hesitancy of one acquainted with the narcotics trade."

The Court also stated (356 U.S. at page 373, 78 S.Ct. at page 821):

"It is patently clear that petitioner was induced by Kalchinian [informer]."

And further the Court stated (356 U.S. at page 375, 78 S.Ct. at page 822):

"The Government sought to overcome the defense of entrapment by claiming that petitioner evinced a 'ready complaisance' to accede to Kalchinian's request."

In the instant case it is not open to doubt but that defendant was induced by Moses to procure the heroin on the two occasions involved. Such being the case, the burden was on the government, as it concedes in its brief, to prove beyond a reasonable doubt that the inducement was not the cause or creator of the crime or, as stated by the Second Circuit in Sherman (200 F.2d 880, 882), "that the accused was ready and willing to commit the offense charged, whenever the opportunity offered."

■ Another instruction criticized by defendant is as follows:

"* * * if it appears from the evidence beyond a reasonable doubt that the defendant committed the crime or crimes charged in the indictment, but involving a different quantity or quantities of heroin hydrochloride than alleged in the indictment, this is sufficient to authorize the jury to find the defendant guilty."

This instruction, in our view, should not have been given. It is inconsistent with and ignores the defense of entrapment. A defendant, by such defense, admits all of the material allegations of the indictment. There was no reason to instruct the jury as to the consequences of a variance between the allegations and proof as to the amount of heroin. More important, however, is the point that by this instruction the jury was required to believe nothing more than that which the defendant conceded by the defense.

1. To avoid confusion, it should be noted that the Sherman case was before the Court of Appeals for the Second Circuit on two occasions. The first time it was reversed for erroneous instructions (200 F.2d 880). On the second appeal, the Court affirmed the conviction (240 F.2d 949). It was this affirmance which the Supreme Court reversed, holding that entrapment was shown as a matter of law (356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848).

■ The government in the main attempts to justify the instructions on the basis that they must be considered in their entirety, that the jury was told that the government had the burden of proving defendant guilty beyond a reasonable doubt and, further, that in any event no prejudicial error was shown. This is a stock argument and in some cases will suffice. In this case, however, where the record presents a close question on the issue of entrapment, we think the jury should have been instructed that the burden was upon the government to satisfy the jury beyond a reasonable doubt that the defendant was not entrapped into committing the acts alleged which, absent entrapment, constituted the offenses. See O'Brien v. United States, 7 Cir., 51 F.2d 674, 677; Ryles v. United States, 10 Cir., 183 F.2d 944, 945. We further are of the view that failure to so instruct the jury was prejudicial.

For the reasons stated, it is our conclusion that defendant is entitled to a new trial on counts 1, 3, 4 and 6. We find no occasion to discuss other alleged errors in the instructions or in the Court's refusal to admit allegedly proper evidence offered on behalf of Landry.

This brings us to counts 7 and 8. Count 7 alleges that Landry purchased heroin hydrochloride, in violation of Sec. 4704(a), Internal Revenue Code of 1954 (Title 26 U.S.C.A. Sec. 4704(a)), as amended by the Narcotic Control Act of 1956. Count 8 alleges that Landry concealed, purchased and facilitated transportation of a quantity of heroin hydrochloride, in violation of Sec. 174 (Title 21 U.S.C.A. Sec. 174), as amended by the Narcotic Control Act of 1956. Under both sections, proof of possession unexplained will authorize a conviction. Section 4704(a) provides:

"* * * the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

Section 174 provides:

"* * * such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

There is no proof, other than that relating to the transactions previously discussed where entrapment was invoked as a defense, that Landry was a dealer in narcotics in any way, shape or form, or that he ever had been. As already noted, he was an addict and, as such, a user of narcotics. He had made numerous attempts to cure himself of his addiction, apparently without success.

The government, therefore, as to these two counts must rely entirely upon its contention that it proved possession by Landry. Whether its proof on this point was sufficient constitutes the sole contested issue. In considering the issue, we shall view the evidence in the light most favorable to the government. Some time shortly after the transactions between Moses and Landry previously referred to, certain officers entered the apartment occupied by Mrs. Barnes, Dolores Dandridge and baby, Billy (Nick) Thurmond and Landry. Landry and Dolores were present. In response to an inquiry, Landry stated that he had no narcotics. Dolores had one hand in her pocket, which at the request of the officers she removed and in which she held a package containing heroin. The officers searched the apartment and on a vanity table in the bedroom occupied by her found a medicine jar which contained heroin. Officers testified to an admission by Landry that the narcotics belonged to him. There is a question as to whether this admission was voluntary inasmuch as it was made after the officers had threatened to take Dolores to jail and separate her from the baby. There was testimony that Landry stated that he was making the admission so as to "take the weight" off of her (Dolores). However, the jury had a right to infer and we so assume that Landry voluntarily admitted ownership. During the same conversation Dolores stated (re-

ferring to the narcotics) "that she was keeping it for Kenneth Landry, because if she let him have it he would use it all at once."

There can be no doubt that actual possession was in Dolores, not Landry. The government appears to so recognize because it states in its brief that a finding of possession in Landry could not be sustained absent his admission of ownership. The government informs us that no case has been found in which the precise question has been decided. We suspect the reason for this is that this is the first time the government has advanced the novel idea that ownership of narcotics is proof of their possession. Ownership and possession of a thing, of course, may merge in the same person but, on the other hand, ownership may be in one person and possession in another. Assuming, as we think proper, that Congress employed the word "possession" in its ordinary and usual connotation, it certainly means something different from "ownership." Ownership is not proof of possession any more than possession is proof of ownership. If Congress had intended that a presumption arise against the owner as well as the possessor of a narcotic, it would have so declared. The same can be said of constructive possession or the unexercised right of possession.

The government approaches the problem from numerous angles. United States v. Pisano, 7 Cir., 193 F.2d 361, 364, is cited in support of the assertion that the jury had a right to infer that Landry had constructive possession. That case involves an entirely different problem and has no relevancy here. It is argued that because Landry lived in the apartment, he necessarily had access to the drugs, with an opportunity to control them at will and, therefore, had possession. This is not only a speculative argument but is contrary to the government's own testimony that Dolores was holding the drugs to prevent Landry from obtaining the entire amount at any one time. In fact, the government is quite liberal with its speculative suggestions. It is suggested that the relationship between Dolores and Landry makes it entirely probable that Landry had placed the narcotics where they were found. Again, it is suggested that the bond of affection existing betwen Dolores and Landry might well result in a situation like the one found to exist. We reject the idea that speculation can be employed as a substitute for proof.

Cases are cited by the government in support of the principle that the admission of a crime is sufficient to support a conviction if it is corroborated by independent evidence of the *corpus delicti*. We see no point in this argument. Possession of a narcotic is not an offense. The statutory presumption which arises from unexplained possession is only a rule of evidence. Velasquez v. United States, 10 Cir., 244 F.2d 416, 418; United States v. Brown, 7 Cir., 207 F.2d 310, 312.

The government plausibly contends that the fact of possession may be shown by circumstantial proof. With this we agree; in fact, this Court has so held. United States v. Pinna, 7 Cir., 229 F.2d 216, 218. But no court, so far as we are aware, has held that proof of possession by one person may be established by circumstantial evidence when the undisputed direct proof places that possession in some other person.

It would not be helpful to quote the numerous definitions of the words "possess" and "possession" which have been called to our attention. As good a definition as we have seen is that of this Court in a criminal case, United States v. Wainer, 7 Cir., 170 F.2d 603, 606. The Court stated:

> "To 'possess' means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature."

As already noted, the undisputed evidence shows that Dolores, not Landry, had actual control, care and management of the narcotic at the time it was found. The suggestion that he might previously

have had possession of it barely approaches the dignity of a guess.

The provision which raises a presumption of guilt from the fact of unexplained possession, and thereby in effect shifts the burden of proof to a defendant, is drastic, no doubt designed to meet a menacing situation. Congress has created a presumption upon proof of the existence of a fact, and now the government would have the Court presume the fact. There may be a case where a court would be justified in so doing but, if so, this is not it. In our judgment the record is devoid of proof that Landry had possession. It follows that there is no basis for a conviction on counts 7 and 8.

In view of what we have held, the judgment predicated upon counts 1, 3, 4 and 6 is reversed and the cause remanded for a new trial. The judgment predicated upon counts 7 and 8 is reversed and the cause remanded, with instructions to dismiss those two counts of the indictment.