Henry **RODELLA**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16846.

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1960.

---

Herbert A. Bernhard, Louis T. La-Tourrette, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Minoru Inadomi, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was indicted on eight counts of violating 21 U.S.C.A. § 174; 70 Stat. 570 (1956), i. e., for having "knowingly received, concealed, transported and sold, or in any manner facilitated the transportation, concealment or sale," of narcotic drugs. Appellant was convicted of the first six counts, and acquitted on the last two. The odd numbered counts charged a sale on four dates; the even numbered counts charged receiving, concealing and transporting, or facilitating the concealment and transportation of the same narcotic drugs on the same four dates. Thus, the first two counts related to August 9, 1958; the second two to August 15, 1958; the third two to August 19, 1958; and the fourth two to August 26, 1958.

Appellant was sentenced to serve ten years, concurrently, on counts one and two; an additional consecutive ten years on counts three and four, each to run concurrently; and an additional consecutive ten years on counts five and six, each to run concurrently; or a total of thirty years. For convenience, appellant has referred in his brief to the four several incidents by their locations, and we shall follow the same designation. Counts one and two, then, relate to the Gateway Market incident; three and four to the Hellman Street incident; five and six to the Alibi Bar incident; and seven and eight to the Owl Bar incident.

Jurisdiction below existed in 18 U.S.C. § 3231, and jurisdiction of this appeal rests on 28 U.S.C. §§ 1291, 1294.

In addition to the general proposition that the denial of appellant's motion for judgment of acquittal was erroneous, appellant urges the trial court committed four specific errors: (1) in permitting the "adoption" by additional witnesses of the testimony of the witness Vega; (2) in permitting the witness Lang to testify as part of the government's rebuttal; (3) in failing to grant all of appellant's pre-trial motions for a bill of particulars as to persons present at the time of the alleged sales; (4) in failing to hold as a matter of law there was no proof by direct evidence of possession of narcotics in the appellant with respect to the Alibi Bar incident. We consider each of the specified errors in turn.

A principal witness for the government was one Sergeant Edward Vega. He was called on direct examination; and twice recalled. As part of its case in chief, the government called two deputy sheriffs of Los Angeles County, each attached to the narcotics detail; each of whom stated that they had heard Sergeant Vega testify, having been in court during his testimony. Sheriff's Deputy Jones testified that he could not add anything to nor make any different statement than that which Sergeant Vega had made with respect to the Gateway Market incident. Sheriff's Deputy Trout testified that his testimony as to the Alibi Bar incident would not differ in any manner from that given by Sergeant Vega. Each of the two witnesses then testified to additional observations made by them, and acts performed by them, with respect to the two several incidents.

To the first question addressed to Jones, as to whether he had anything to add, counsel for defense made a general objection, and later objected to the form of the question. The court overruled both objections. As to witness Trout's testimony that he would not differ with Sergeant Vega's testimony, a general objection was first made. Thereafter an objection was made on the ground that the question was irrelevant and immaterial. Both objections were overruled. Appellant urges that such rulings were prejudicial error.

■■ We do not encourage the use of such a timesaving device as one wit-

ness "adopting the testimony of another" in the trial of any case, particularly a criminal case. It adds little, if anything to a party's case. Yet we fail to see how appellant was injured. The court explained to appellant's counsel the reason for his ruling—economy of time.[1] It appears to us that such blanket adoption of another witness' testimony would have little if any weight with an ordinary jury in establishing the facts, and would weaken, if not eliminate, the cumulative effect of Jones and Trout as witnesses to those evidentiary facts established by Vega's testimony. The value of repetition to the prosecution's case was lost. But whether this be true or not, we must keep in mind that the trial court has a very large discretion as to how it will permit the introduction of evidence. Wills v. Russell, 1879, 100 U.S. 621, 626, 25 L.Ed. 607.

Furthermore (and this to our mind is conclusive), appellant's counsel, if he had desired to cross-examine the witnesses Jones and Trout to pursue conflicts in their testimony as compared to that of the witness Vega, could have asked the respective witnesses to repeat what they knew of the incidents. At no time was counsel for appellant deprived of any right of cross-examination. While, as we have stated, we question whether the use of such adopted testimony is of great or any value to a jury, we fail to find that the trial court acted beyond its well recognized jurisdiction to control the method of introduction of evidence, or that the defense was prevented from exercising any legal right to which it was entitled.

The second error alleged is that the government failed to call the witness Lang as part of its case in chief to support the testimony of its witness Vega. When the truth of Vega's testimony was challenged, as it was by appellant (particularly with respect to the fourth or Owl Cafe incident, of which appellant was *not* convicted), the government as part of its rebuttal offered the testimony of the witness Lang to bolster the truthfulness of Vega's statements.

The general rule has long been that whether material evidence (which *could* have been received as part of the case in chief) *should* be admitted in rebuttal, lies solely within the sound judicial discretion of the trial court. Goldsby v. United States, 1895, 160 U.S. 70, at page 74, 16 S.Ct. 216, at page 218, 40 L.Ed. 343; Samish v. United States, 9 Cir., 1955, 223 F.2d 358, certiorari denied 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755; Lelles v. United States, 9 Cir., 1957, 241 F.2d 21, certiorari denied 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136. But let us assume not only that the evidence of Lang *could* have been introduced as part of the government's case, but that it *should* have been, i. e., that it was essential to the government's case. We have already passed on such a matter in Austin v. United States, 9 Cir., 1925, 4 F.2d 774, at page 775, where we said:

"It would seem that the defendant in error reserved testimony for rebuttal that should have been offered as a part of its main case. Thus the government proved, as a part of its case in chief, that the multigraphed letters to the banks and the addressed envelopes were delivered to the wife of the plaintiff in error by his direction, and that she paid the bill[s] by checks, and, if the Government intended to prove that the indictment letters were signed by the wife, that was the proper time and place to do it. *But it is not prejudicial error to admit testimony in rebuttal which should have been offered as a part of the main case, unless the party against whom the testimony is admitted is denied the right to controvert or contradict it, and there was no denial of that right in this case.*" (Emphasis added.)

[1] "We permit the question to someone who was present in the interests of the economy of time, subject to cross examination, and permit him to state whether he heard the testimony, and whether he would add anything to it. We do that in the interests of the economy of time."

We thus find no error in the court permitting Lang to testify when he did.

■ The third point raised by appellant is that his demand for a bill of particulars prior to trial was granted in part and not in whole, and he was not given the names of the persons who were present at the times of the four alleged sales. The purpose of a bill of particulars is to protect a defendant against a second prosecution for the same offense and to enable him to adequately prepare his defense and to avoid surprise at the trial. Remmer v. United States, 9 Cir., 1953, 205 F.2d 277, 281.

The government resisted full compliance with appellant's request on the ground that it was not required to list the witnesses it might or might not call at the trial. Appellant replies he was not seeking a list of the government's witnesses, but merely a list of the persons who witnessed the alleged sales. This seems to raise a question of semantics. The persons the government would naturally call as witnesses would be the persons who witnessed the alleged sales; those who witnessed events leading thereto; those who witnessed events occurring thereafter; and the technical experts who would testify that the subject of the transactions was a narcotic. We do not find United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92, in any way apposite.

Appellant relies heavily on Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. That case related to the disclosure of an informant's identity. The informant had been referred to in the indictment as John Doe, and it was charged that the appellant had sold John Doe heroin. Such was not the fact in the indictment here before us. The appellant here was charged with a sale on each of four occasions to a person named Robert E. Zuniga. That there were four separate transactions charged was revealed to the appellant by the dates specified and the fact there were four differing amounts of heroin mentioned.[2]

■■ The determination of the extent to which a motion for a bill of particulars should be granted has been frequently and consistently held to be a matter addressed to the sole judicial discretion of the trial court. The trial court's ruling thereon should not be disturbed by us in the absence of proof of an abuse of that discretion. United States v. Bryson, D.C., 16 F.R.D. 431, affirmed 9 Cir., 238 F.2d 657, certiorari denied 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed. 2d 34; Cooper v. United States, 9 Cir., 1960, 282 F.2d 527; Nye & Nissen v. United States, 9 Cir., 1948, 168 F.2d 846, 851, affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; Schino v. United States, 9 Cir., 1954, 209 F.2d 67, 69. We find no abuse of discretion by the trial court in granting that portion of the bill of particulars which it did grant, and in failing to grant that which it did not. The appellant was advised the dates involved, the amounts of the drug involved, the geographical sites of the claimed sales, and the persons to whom the alleged sales were made. This was sufficient to accurately define the charges made; to prevent surprise; and to adequately enable the appellant to prepare his defense. To this he was entitled, but to no more.

■ This brings us to the appellant's last point, namely, that counts five and six relating to the Alibi Bar incident should have been dismissed because there was no "direct" evidence of possession sufficient to bring into effect the presumption arising out of the second paragraph contained in 21 U.S.C.A. § 174, that "possession of the narcotic drug" is "deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." We note that by the specific language of § 174 defendant must be "shown *to have or to have had* possession

2. Counts one and two specified the sale of two hundred and eighteen grains of heroin; counts three and four, four hundred grains of heroin; counts five and six, four hundred and sixteen grains of heroin; counts seven and eight, four hundred and seven grains of heroin.

of the narcotic drug." (Emphasis added.) This provision that past or present possession is sufficient evidence to authorize conviction unless the defendant explains his possession is exclusively a rule of evidence and procedure, making proof of one fact prima facie evidence to authorize a finding of related facts unless rebutted; and thus relieves the government from proving importation. Velasquez v. United States, 10 Cir., 1957, 244 F.2d 416.

■ Possession of narcotics is not a necessary element of the statutory crime of receiving, concealing, buying and facilitating the transportation and concealment of narcotics, with knowledge of their illegal importation, all prohibited by 21 U.S.C.A. § 174, because the statutory presumption of guilt from possession of such drugs is a statutory rule of evidence *only*. United States v. Brown, 7 Cir., 1953, 207 F.2d 310; Corollo v. Dutton, 5 Cir., 1933, 63 F.2d 7, 8.

Congress has not attempted to make possession of narcotics a crime. United States v. Brown, supra. That may be a state crime. Appellant here is not charged with "possession" of narcotics, but with receiving or concealing or selling, or in some manner facilitating the transportation or concealment of narcotics. True, it is only certain narcotics to which the statute applies—those which have been imported into the United States contrary to law. That the narcotic drug is that type which is prohibited can be proved (a) by testimony relating to the substance itself, such as color, analysis, etc., or (b) by testimony as to the surrounding circumstances (such as an arrest, search and discovery upon the crossing of a national border) etc., or (c) by reliance on the statutory presumption arising from proof of possession.

Appellant cites and largely relies upon the following underscored language in Harris v. United States, 1959, 359 U.S. 19, at page 23, 79 S.Ct. 560, at page 564, 3 L.Ed.2d 597, where the Supreme Court states:

"[T]o take advantage of the presumption of § 174 it is necessary only to prove possession by *direct evidence*; where as to take advantage of the presumption of § 4704 (a) it is necessary to prove by direct evidence that the narcotic was unstamped as well as that it was in the defendant's possession." [3] (Italics added.)

■ Obviously, there need be no proof by direct evidence of a *present* possession at the time of the crime charged; a *past* possession is sufficient. To require proof of a present possession would fly in the face of the statute, and would make the distinction expressed by the Congress—"to have or to have had possession"—meaningless. Likewise, to hold that there must be direct evidence of *actual* physical possession as distinguished from direct evidence of *constructive* possession is contrary to long established law, both in this circuit and others, which is hereinafter cited. It would render the entire section ineffective.

We first consider the different kinds of possession, actual and constructive.

Possession means having something in one's power. Cf: 33 Words & Phrases, p. 75, and cases cited. Actual possession exists when the thing is in the immediate possession or control of the party. Mullaney v. United States, 9 Cir., 1936, 82 F.2d 638, 642. Constructive possession is that which exists without actual personal occupation of land or without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion. Possession may, but need not, imply title. It

3. The government asserts that in using the term "direct evidence" in the Harris case, the Supreme Court "undoubtedly * * * was equating the term to 'case in chief' or 'main case' or that portion of the evidence the government must put forth to raise the presumption." While this is a possible interpretation, we do entertain doubts as to its validity, and prefer to distinguish the controlling effect of Harris on other grounds.

is not limited to manual touch or personal custody. Hawaii v. Awai, 1899, 12 Haw. 174. It is not necessary that possession be immediate or exclusive. Borgfeldt v. United States, 9 Cir., 1933, 67 F.2d 967.

The Restatement of Torts, § 216, defines "possession of a chattel" as being where a person has physical control of a chattel with intent to exercise such control in his own behalf, *or*, one who has had such physical control with such intent to exercise control although he is no longer in physical control, if he had not abandoned it and no other person has obtained possession.

This factor of dominion and control over an object so as to give power of disposal to one who so dominates and controls, has been held applicable in "liquor possession" cases. Toney v. United States, 1933, 62 App.D.C. 307, 67 F.2d 573. And we think it clearly applicable to narcotic cases.

There is no question in our mind but that a person should be held to be in possession of an object if that object, even though not in his manual or personal physical possession, is, for example, in his home, behind locked doors, and within a safe therein, to which home and safe the person has access and makes no explanation as to how or why he has such control. Likewise, we see no reason why an object cached by a person or his operative or agent in a certain spot on deserted land, not owned by him, perhaps located ten miles from the nearest highway, house, habitation or person, could not be deemed in law within that person's possession, there being no explanation. While there might be a difference of opinion, in either case, as to whether such possession was actual or constructive, such possession could be proved either by direct or circumstantial evidence. The same conclusion should apply if the object happens to be narcotics. Any attempted differentiation between direct and circumstantial evidence at times becomes indistinct, and in law, unimportant.[4] Whatever Mr. Justice Clark may have meant by the term "direct evidence" in the passage cited from the Harris case, we are satisfied that he did not mean "direct evidence" as distinguished from "circumstantial evidence." That the effect of proof of possession by either method brings into play a legal rule of procedure, does not destroy the evidentiary validity of the fact of possession, whether actual or constructive. It is not basing a presumption on an inference because the proof of possession, whether actual or constructive, calls for a reasoned conclusion of the trier of fact —based on factual evidence in either case.

We reassert the rule that possession may be either actual or constructive, and that proof of dominion and control over narcotics sufficient to establish possession thereof may be by use of either circumstantial or direct evidence. Pitta v. United States, 9 Cir., 1947, 164 F.2d 601, 602; Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, 394; Henry v. United States, 9 Cir., 1954, 215 F.2d 639, 640; Brown v. United States, 9 Cir., 1955, 222 F.2d 293, 297; Evans v. United States, 9 Cir., 1958, 257 F.2d 121, 128; Johnson v. United States, 9 Cir., 1959, 270 F.2d 721, 723; Covarrubias v. United States, 9 Cir., 1959, 272 F.2d 352, 364; Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 945. And see: United States v. Pisano, 7 Cir., 1951, 193 F.2d 355, at page 360, 31 A.L.R.2d 409; United States v. La Rocca, 2 Cir., 1955, 224 F.2d 859, 860; United States v. Pinna, 7 Cir., 1956, 229 F.2d 216, 218; United

4. "As a legal matter, there is no distinction between direct and circumstantial evidence." 3 Wharton, Criminal Evidence 472 (12 ed. 1955).

Circumstantial evidence "has probative value equal to that of testimonial evidence." Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327, 329. "The law does not belittle the value of circumstantial evidence by making a relative distinction between it and direct evidence." People v. Hales, 1914, 23 Cal.App. 731, 735, 139 P. 667, 668. See also Mason v. Rolando Lumber Co., 1952, 111 Cal. App.2d 79, 243 P.2d 814, and 1 Wigmore, Evidence, § 26 (3d ed. 1940).

States v. Maroy, 7 Cir., 1957, 248 F.2d 663, certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414; United States v. Malfi, 3 Cir., 1959, 264 F.2d 147, 150.

Appellant likewise relies heavily on United States v. Landry, 7 Cir., 1958, 257 F.2d 425. The facts there differ from those in this case. We agree that a mere presence in the vicinity of narcotics or a mere knowledge of the physical location of narcotics does not amount to possession, when (as Landry, supra, says) "the undisputed direct proof places that possession in some other person." Id., at page 431. Landry also states: "The government plausibly contends that the fact of possession may be shown by circumstantial proof." Ibid. This court has so held (United States v. Pinna, supra; Green v. United States, 9 Cir., 1960, 282 F.2d 388), and again so holds.

The judgment is affirmed.