**Lcdr John R. DALY, Jr.
U.S.N. Plaintiff,**

v.

**FAR EASTERN SHIPPING COMPANY PLC, Fesco Agencies N.A., Inc. and Fesco Intermodal, Inc., Defendants.**

No. C01–0880C.

United States District Court,
W.D. Washington
at Seattle.

Jan. 7, 2003.

———————

Michael J. Hurley, Howrey Simon Arnold & White, Washington, DC, Larry Klayman, Paul J. Orfanedes, Klayman & Associates, Washington, DC, Richard A Bersin, Law Office o.f Richard A Bersin, Bellevue, WA, for Plaintiff.

Marc E. Warner, Legros, Buchanan & Paul, Seattle, WA, for Defendant.

## ORDER

COUGHENOUR, Chief Judge.

## I. Introduction

This matter is before the Court on plaintiff's motion for a new trial (Dkt. No. 86) and plaintiff's motion to file the declaration of Adam Adirim (Dkt. No. 98). For the reasons described below, the motion for new trial is DENIED. The motion to file Mr. Adirim's declaration is GRANTED.

This action arises out of plaintiff's mission to conduct surveillance of defendants' merchant vessel on behalf of the U.S. Navy in 1997. Plaintiff took several photographs of the ship from a helicopter as the ship traveled through the Strait of Juan de Fuca. Plaintiff claims that a laser emitted from defendants' ship struck him in the eye while he took the photographs, causing him permanent eye damage. Plaintiff alleges that the ship, the M/V Kapitan Man, was in fact a Russian spy ship posing as a merchant vessel.

After an eight-day trial, a jury found for the defendants on all counts. Plaintiff now moves for a new trial based on newly discovered evidence and several assignments of error.

## II. Analysis

### A. Newly obtained evidence does not necessitate a new trial.

At trial the parties disputed whether there was a laser aboard the Kapitan Man. Shortly after the trial, plaintiff received a letter from a Canadian longshoreman named Adam Adirim. Dkt. No. 86, Ex. 1. Mr. Adirim claimed that he worked on the Kapitan Man when the ship called at Vancouver, British Columbia in 1997. In the letter, Mr. Adirim stated that it was "common knowledge" among longshoremen that the Kapitan Man had a laser on board. Mr. Adirim wrote that a fellow longshoreman told Mr. Adirim that if he saw a light coming from the Kapitan Man's bridge he should avert his eyes. Mr. Adirim states that he did see a light coming from the bridge one evening and looked at the light despite the longshoreman's advice. Mr. Adirim wrote that his doctor subsequently told Mr. Adirim that there was evidence of scorching on his eye.

After speaking with attorneys for both parties, Mr. Adirim sent a second letter to plaintiff's counsel. Dkt. No 99, Ex. 1. In that letter Mr. Adirim stated that he could not help plaintiff because his testimony would be hearsay. Mr. Adirim also stated that "the irritation in my eyes would not be considered a laser upon scrutiny, as no medical record exists other than my doctor telling me that irritation was present." *Id.*

Plaintiff's attorneys then interviewed Mr. Adirim and obtained his sworn declaration. Dkt. No 99, Ex. 3. In the declaration, Mr. Adirim repeats his statement that a longshoreman told him not to look at the Kapitan Man's bridge because a laser housed there would damage his eyes and restates his belief that it was "common knowledge among the longshoreman with whom I worked that the Kapitan Man had a laser aboard." *Id.* Mr. Adirim's declaration also recounts that he saw a "beam

of bright white light" coming from the Kapitan Man's bridge. At a routine doctor's appointment after the incident, the declaration states, the doctor told Mr. Adirim that Mr. Adirim's eyes were irritated.

█ Plaintiff contends that the discovery of Mr. Adirim's testimony warrants a new trial. Newly discovered evidence warrants a new trial where: 1) the evidence was discovered after the trial; 2) the evidence could not have been discovered earlier through a diligent search; and 3) the newly discovered evidence is of such a magnitude that production of it earlier likely would have changed the outcome of the trial. *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 929 (9th Cir.2000).

█ Mr. Adirim's potential testimony does not necessitate a new trial because most of it is inadmissible and because the portions that are admissible would not have changed the outcome of the trial. Mr. Adirim's declaration makes four points: 1) another longshoreman told him that there was a laser aboard the Kapitan Man; 2) it was "common knowledge" that there was a laser aboard the Kapitan Man; 3) Mr. Adirim saw a light coming from the Kapitan Man's bridge; and 4) shortly thereafter a doctor told Mr. Adirim that his eyes were irritated. Each point of testimony is either inadmissible or insignificant.

The first two points of potential testimony-that a longshoreman told plaintiff about a laser and that the presence of the laser was common knowledge-are hearsay and would be inadmissible at trial. Testimony that a fact is common knowledge is hearsay because such testimony summarizes the knowledge of persons other than the declarant. Fed.R.Evid. 802; *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1420 n. 4 (9th Cir.1994); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 295 (5th Cir.1987).

The third point of potential testimony-that Mr. Adirim saw a light coming from the Kapitan Man's bridge-may be admissible, but the testimony would not have changed the outcome of the case. It was undisputed at trial that a light was housed on the Kapitan Man's bridge; the only dispute was whether the light was a laser or a navigational light. Mr. Adirim does not opine on whether the light he saw was a laser or a navigational light and in any event would be unqualified to offer such an opinion. Fed.R.Evid. 703(c). Testimony stating simply that a light was housed in the bridge area would not have affected the outcome of the trial.

The fourth point of potential testimony-that a doctor found that Mr. Adirim's eyes were irritated-appears to be hearsay. Plaintiff has not submitted a declaration from the doctor. Even setting aside the hearsay problem, the testimony would not be significant enough to change the outcome of the trial. As Mr. Adirim points out, the doctor did not conclude that there was laser damage to Mr. Adirim's eyes; simply that Mr. Adirim's eyes were irritated. At trial, plaintiff offered evidence to show that Patrick Barnes, who participated in the same surveillance mission as plaintiff, suffered eye problems consistent with laser damage. This evidence was far stronger than the proposed testimony that Mr. Adirim's eyes were irritated, yet the testimony relating to Barnes was insufficient to persuade the jury that plaintiff's claim was valid. It is therefore extremely unlikely that Mr. Adirim's testimony would have had any effect on the outcome of this trial. The evidence does not merit a new trial.

**B. The imposition of time limits does not necessitate a new trial.**

On September 18, 2001, this Court conducted a status conference with counsel for

both parties. Counsel agreed, on the record, that the case would take a total of one week to try. This Court found that duration appropriate and set the matter for trial on October 7, 2002.

At a pre-trial conference one week before trial, counsel requested for the first time that the Court double the time allotted for trial and permit *each party* five days to present its case. The Court denied the request but granted a second request by plaintiff's counsel to allow each party four days, for a total trial time of eight days. Midway through the trial, the Court expanded the trial day by shortening the lunch recess by one half-hour. The Court observed this expanded schedule the last five days of trial, effectively adding a half-day to the trial.

The Court informed counsel of the time remaining at several points in the trial and reminded plaintiff's counsel to reserve time if plaintiff planned to present rebuttal testimony. Despite these warnings, plaintiff's counsel exhausted all of plaintiff's time and then attempted to call an additional rebuttal witness, Senator Robert Smith. The Court excluded Senator Smith's testimony for several reasons, including that plaintiff had exhausted his allotted time.[1]

██ Plaintiff did not object to the time limit at any point in the trial. In his motion for new trial, however, plaintiff asserts that this Court erred by imposing an "arbitrary" time limit. Plaintiff's counsel contends that the time limits were driven by this Court's travel plans, not the characteristics of the litigation. The assertion is baseless and offensive. This Court did in fact have travel plans following the trial, but those plans bore no relationship to the decision to set and enforce a time limit.

The trial concluded on a Thursday. This Court did not have to travel until the following Saturday. Moreover, all parties and the Court agreed that the trial could proceed on Columbus Day (Monday of the second week of trial), though this did not become necessary. This Court's rulings that set and enforced the time limits could not have been motivated by the Court's travel plans because even two additional days of trial would not have conflicted with the plans. The Court notified counsel of the travel plans not because they motivated the time limits but to give counsel fair notice that counsel needed to use all of the time available each day. If counsel had rested early on several afternoons the trial might have been pushed back far enough to create an actual conflict. By seeing that each trial day was filled, this Court ensured that no conflict arose.

Rather than exercising the fortitude to look inward and learn from a case tried less than perfectly, plaintiff's counsel seized on his knowledge of the Court's travel plans to direct the blame for the adverse verdict at this Court. Apparently this reaction is a habitual one for plaintiff's counsel. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 138 F.3d 33, 38 (2d Cir.1998) (affirming revocation of Mr. Klayman's and Mr. Orfanedes' *pro hac vice* status in the Southern District of New York and finding that Mr. Klayman's accusation of pro-Asian bias on the part of the trial judge had "no factual basis" and that the charges were "discourteous, degrading, and prejudicial to the administration of justice"); *Baldwin Hardware Corp. v. Franksu Enter. Corp.,* 78 F.3d 550, 555–62 (Fed.Cir.1996) (affirming revocation of Mr. Klayman's *pro hac vice* status in the Central District of California for making

---

1. The other reasons for excluding this witness's testimony are described at Section D below.

misrepresentations to the Court; in the appellate briefing Mr. Klayman accused the trial judge of being anti-Asian and anti-Semitic). Regrettably, counsel's behavior appears to be part of a larger trend within a segment of the trial bar to engage in ad hominem attacks when dissatisfied with a result at trial.

 In any case, this Court's imposition of the eight-day time limit does not necessitate a new trial for several reasons. First, a party must raise its objection to a time limit during the trial. A party that fails to raise the objection waives its ability to do so after the trial. *Monotype Corp., PLC v. Int'l Typeface Corp.,* 43 F.3d 443, 451 (9th Cir.1994). Because plaintiff's counsel did not object to the time limits and in fact suggested the eight-day time limit in the first place, plaintiff will not now be heard to argue that the eight-day time limit was improper.

Second, the eight-day time limit was based on the parties' own pretrial estimates of the time needed for trial. The eight days permitted was itself a substantial increase over the parties' original estimate of five days. In addition, this Court expanded the trial days by one half-hour, adding the equivalent of a half-day of trial time. Thus, the trial time permitted was not only based on, but significantly exceeded, counsel's estimates.

The Ninth Circuit specifically has approved of time limits based upon parties' own estimates. *Amarel v. Connell,* 102 F.3d 1494, 1513 (9th Cir.1996). There is good reason to hold parties to the estimates that they make at status conferences. It is essential to the management of a trial court's docket that parties estimate with reasonable accuracy the time they will need for trial. It is for this reason that courts hold status conferences to plan trials months in advance of the trial date. Permitting parties to double their long-standing estimates immediately

before trial without showing a substantial justification for doing so would introduce an unacceptable and unnecessary element of chaos into the calendar. Because the eight-day limit was proposed by plaintiff's counsel and far exceeded counsel's original estimate, plaintiff's position that the time limits were arbitrary is not well-taken.

Third, eight days was more than enough time to try this case. At bottom, plaintiff asserted a simple battery claim that probably could have been tried in five days as the parties originally estimated. The defendants had no difficulty presenting their case in the allotted time, and there was a substantial amount of repetition in the presentations of both parties. The fact that plaintiff's counsel chose to pursue a theory of the case that relied on far-flung issues of military and foreign policy did not entitle plaintiff to unlimited trial time.

Fourth, plaintiff does not identify any particular harm he suffered as a consequence of the time limits. A party objecting to trial time limits "must show there was harm incurred as a result" of the time limits. *Monotype,* 43 F.3d at 451. Plaintiff intended to call only one witness after plaintiff's time limit expired. As explained in Section D of this order, the Court excluded that witness for several reasons unrelated to the time limits. Plaintiff also states that he was required to cut short the testimony of his laser expert, Terrence Kessler, but does not describe the additional testimony that Mr. Kessler would have given in the absence of the time limit. Plaintiff has therefore not made the necessary showing of harm. The time limits were properly enforced and do not necessitate a new trial.

### C. Rear Admiral Cramer's testimony was properly excluded.

In his Fed.R.Civ.P. 26(a) disclosure, plaintiff identified Admiral Michael

Cramer to testify about the "facts and circumstances surrounding the surveillance mission." Dkt. No. 94, Ex. 10. On September 27, 2002, the parties submitted a proposed pretrial order. The order made no mention of Admiral Cramer.

On September 30, plaintiff submitted an "errata" to the pretrial order. The errata proposed that Admiral Cramer testify on the subject of "Russian intelligence agencies' use of FESCO-owned merchant vessels for intelligence gathering activities against the United States, Russian monitoring of U.S. nuclear ballistic submarines and U.S. carrier battle groups in the 1990's, [sic] and Soviet/Russian intelligence agencies' use of lasers as weapons against U.S. intelligence gathering operations in the 1990's [sic]." Plaintiff's Errata to Pretrial Order.

Defendants moved in limine to exclude Admiral Cramer's testimony based on plaintiff's failure to make proper disclosures, and this Court granted the motion. Plaintiff now contends that this Court erred by excluding the testimony.

■ Admiral Cramer's testimony was properly excluded because he was not identified in the pretrial order and because his proposed testimony was not based on personal knowledge. Fed.R.Civ.P. 16(e) provides that the pre-trial order "shall control the course of the action unless modified by a subsequent order." Rule 16(e) further provides and that the pretrial order should be modified "only to prevent manifest injustice." Plaintiff contends that the Court should have modified the pretrial order because to do so would not have prejudiced the defendants. However, the Ninth Circuit has made clear that a court should not modify a pretrial order simply because the opposing party would suffer no prejudice. In order to effect the "salutary purpose" of Rule 16(e), trial courts may modify the order only upon a showing of "substantial justification." *United*

*States v. Lummi Indian Tribe,* 841 F.2d 317, 320–21 (9th Cir.1988).

Plaintiff's only justification for his failure to include Admiral Cramer in the pretrial order is that plaintiff's senior counsel did not have an opportunity to review the proposed pretrial order. This did not justify modification of the pretrial order. This Court set the deadline for submission of the pretrial order in September 2001, giving plaintiff over one year of advance notice of the deadline. Plaintiff's senior counsel failed to review the proposed order at his own peril. As the Ninth Circuit noted in the *Lummi Tribe* decision, "any injustice resulting from exclusion" results from the "party's own failure properly to present his case." 841 F.2d at 320, *quoting Colvin v. United States,* 549 F.2d 1338, 1340 (9th Cir.1977). Because plaintiff provided no justification for modifying the pretrial order, the original order controlled the trial and required that Admiral Cramer be excluded.

This Court properly excluded Admiral Cramer's testimony for the additional reason that Admiral Cramer had no personal knowledge of the facts about which he proposed to testify. Because plaintiff did not designate Admiral Cramer an expert witness, Admiral Cramer could testify only to facts within his personal knowledge. Fed.R.Evid. 602. A witness has personal knowledge of a fact only if the witness "had an opportunity to observe, and has actually observed, the fact." *United States v. Owens,* 789 F.2d 750, 754 (9th Cir.1986) *rev'd on other grounds,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951; *see* Fed.R.Evid. 602 advisory committee's notes.

As a very high ranking naval officer, Admiral Cramer obtained his knowledge of Russian intelligence operations from briefings and other second-hand reports, not personal experience. While Admiral Cramer may have been qualified to give

expert testimony on these subjects, plaintiff failed to make expert disclosures on behalf of Admiral Cramer as required by Fed.R.Civ.P. 26(a)(2). The testimony was properly excluded.

### D. Senator Smith's testimony was properly excluded.

Shortly before the lunch recess on the last day of trial, plaintiff's counsel announced that plaintiff intended to call United States Senator Robert Smith as a rebuttal witness. Plaintiff did not identify Senator Smith in the pretrial order or on any of plaintiff's witness disclosures. Counsel stated that Senator Smith would testify that he believed the Office of Naval Intelligence ("ONI") had altered a photograph of the Kapitan Man to conceal a laser and then "stonewalled" when Senator Smith inquired into the alterations at an Armed Services Committee hearing. This Court excluded Senator Smith's testimony because 1) the proposed testimony related to issues that were the subject of plaintiff's case-in-chief and therefore was not proper rebuttal; 2) Senator Smith was not identified in the pretrial order; 3) the testimony would have been more prejudicial and misleading than probative; and 4) plaintiff's time had expired. Each was a proper basis on which to exclude Senator Smith's testimony.

■■■ Senator Smith's testimony was not proper rebuttal. Rebuttal evidence is allowed "to permit a litigant to counter new, unforseen facts brought out in the other side's case." *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir.1999); *see* Charles

Alan Wright and Victor James Gold, 28 Federal Practice and Procedure § 6164 (1993) (rebuttal evidence "may not merely support the case-in-chief of the prosecution or plaintiff"). Rebuttal evidence is admissible only where the need for it could not have been foreseen at the time the plaintiff presented its case-in-chief. *Id.* "When a party knows that a contested matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to complain that the trial court refused to give him a second nibble at the cherry." *Id.*[2]

Plaintiff offered Senator Smith's testimony to attack the ONI report's conclusion that plaintiff's photograph did not show a laser coming from the bridge of the Kapitan Man. Both parties knew long before trial that the validity of the ONI report would be one of the most hotly contested issues in this case. Plaintiff identified at least seven witnesses in the pretrial order to testify that the ONI investigation and its conclusions were flawed.[3] At trial, plaintiff spent a substantial portion of his case-in-chief attacking the ONI investigation, and plaintiff himself testified that he believed the ONI had engaged in a coverup of the alleged laser attack. Senator Smith's testimony that he thought the ONI "stonewalled" would have constituted a similar attack on the investigation and should have been presented along with the other testimony to this effect in plaintiff's case-in-chief. Senator Smith's proposed testimony was not proper rebuttal.

---

**2.** The Ninth Circuit has not specified a particular rule for determining whether rebuttal evidence is proper but has held instead that this is a determination "solely within the sound judicial discretion of the trial judge." *Rodella v. United States*, 286 F.2d 306, 309 (9th Cir.1960). The Court finds the majority approach described by the First Circuit in *Faigin* to be well-reasoned and finds unper-

suasive the unpublished Sixth Circuit decision cited by plaintiff for the proposition that rebuttal evidence may respond to evidence foreseeable by the plaintiff.

**3.** These witnesses are Robert Bennett, Michael Cleary, Raymond Elliott, Nancy Swanson, Russell Kraus, Terrence Kessler, and plaintiff.

■ Even if Senator Smith's testimony had been proper rebuttal testimony, the Court would not have permitted him to testify because plaintiff did not identify him in the pretrial order. As Section C of this order explains, persons not named in the pretrial order may not testify unless the offering party shows a substantial justification for modifying the pretrial order. *Lummi Indian Tribe*, 841 F.2d at 320–21. And as explained in the preceding paragraph, Senator Smith could have been identified in the pretrial order because any need for his testimony was evident long before the parties submitted the proposed pretrial order. Because plaintiff failed to identify Mr. Smith in the pretrial order and did not show a substantial justification for modifying the order, his testimony was inadmissible.

■ Senator Smith's testimony was inadmissible for the additional reason that it would have been more prejudicial than probative. Because Senator Smith is not a photography expert, his opinion that plaintiff's photograph had been altered was inadmissible. The only potential admissible testimony related to Senator's Smith's perception that the ONI "stonewalled" when he asked about the photograph. Whether the ONI "stonewalled" in a Senate hearing bears only tangentially on the relevant question whether plaintiff's photograph showed a laser. On the other hand, a U.S. Senator's assertions of wrongdoing by the Navy could have been highly prejudicial and misleading to the jury. The testimony was inadmissible under Fed.R.Evid. 403.

Finally, Senator Smith's testimony was properly disallowed because plaintiff had exhausted his time. If, as plaintiff asserts, Senator Smith's testimony would have been powerful enough to change the minds of the jurors, plaintiff's counsel should have reserved time for the testimony. Because counsel chose not to do so, fair application of the time limits required that the testimony be excluded.

## E. Terrence Kessler's testimony relating to his laser experiment was properly excluded.

Plaintiff designated Mr. Terrence Kessler to give expert testimony about whether plaintiff's photograph of the Kapitan Man showed a laser or a navigational light. One major subject of Mr. Kessler's expert report was the validity of the Dalgren Report, the Navy's analysis of plaintiff's photograph. The authors of the Dalgren Report photographed lasers and then compared those images to the image in plaintiff's photograph. The authors found that the image on plaintiff's photograph did not resemble the images of the lasers and concluded that plaintiff's photograph did not show a laser.

Mr. Kessler's expert report analyzed the Dalgren Report in detail and identified what he believed were ten specific flaws in the report's methodology. He concluded that the report was methodologically unsound and that its conclusion-that plaintiff's photograph did not show a laser-was unreliable. Mr. Kessler's report also stated that he was in the process of conducting his own experiment that, like the Dalgren Report, compared plaintiff's photograph with control photographs of images known to be lasers. Mr. Kessler stated in a footnote that he would describe the experiment and its results in a subsequent report.

Defendants responded to Mr. Kessler's report with the report of Dr. Siegman. Like Mr. Kessler, Dr. Siegman reviewed the Dalgren Report, but Dr. Siegman concluded that the report was sound. Dr. Siegman concurred with the Dalgren Report's authors in the conclusion that plaintiff's photograph did not show a laser. Dr. Siegman also addressed Mr. Kessler's discussion of flaws in the Dalgren Report.

On the deadline for plaintiff's expert rebuttal report, plaintiff produced an "addendum" to Mr. Kessler's report. Some of the addendum responded directly to statements in Dr. Siegman's expert report. However, the addendum also reported for the first time the results of an experiment that Mr. Kessler conducted in which he took his own pictures of a laser and compared them to plaintiff's photograph. Some of the lasers that Mr. Kessler photographed were powered at a lower level than the lasers that the ONI photographed in the Dalgren Report. Mr. Kessler found that the lower powered lasers were not visible on photographs. Based on this finding, Mr. Kessler hypothesized that a laser with an energy level high enough to cause eye damage, but lower than the one used in the Dalgren experiment, might not be visible in a photograph. Mr. Kessler concluded that his experiment identified a new flaw in the Dalgren Report: that the lasers used in the Dalgren Report were powered at a higher level than necessary and therefore may have exaggerated the visibility of an injurious laser in a photograph.

Defendants moved in limine to exclude or limit Mr. Kessler's testimony. Defendants argued that opinions based on Mr. Kessler's experiment should be excluded because the experiment was not proper rebuttal to Dr. Siegman's report. Defendants also moved to exclude other portions of Mr. Kessler's testimony for reasons not relevant here. On October 7, this Court granted defendants' motion and forbade plaintiff from offering any of the testimony set out in the addendum to Mr. Kessler's report.

Plaintiff moved for reconsideration of the order in limine. On October 11, this Court issued a written order granting the motion for reconsideration in part and denying it in part. The Court ruled that some of the testimony described in Mr. Kessler's addendum was proper rebuttal and would be admitted. However, this Court maintained its refusal to admit evidence relating to Mr. Kessler's experiment because the new experiment did not address any issue raised by Dr. Siegman's report. Because the experiment simply identified a new flaw in the Dalgren Report it should have been disclosed in Mr. Kessler's first report which was largely devoted to challenging the Dalgren Report. The order also noted that Mr. Kessler began the new experiment *before* Dr. Siegman provided his report to plaintiff, which underscored that the experiment could not have been undertaken to rebut Dr. Siegman's report. The Court concluded that any testimony relating to the experiment was not admissible under Fed. R.Civ.P. 26(a)(2), which states that rebuttal disclosures may only contain opinions offered "solely to contradict or rebut" other expert testimony.

Plaintiff nonetheless argues that it was error to exclude testimony about Mr. Kessler's experiment. Plaintiff does not identify any portion of the Siegman report that the experiment rebuts or contradicts as required by Rule 26. Instead, plaintiff contends that any challenge to the Dalgren Report constitutes a challenge to Dr. Siegman's opinion because Dr. Siegman concurred with the Dalgren Report. Plaintiff also denies the Court's finding that Mr. Kessler began his experiment before receiving Dr. Siegman's report.

█ This Court properly excluded Mr. Kessler's testimony relating to the experiment for the reasons stated in the October 11 order. Plaintiff's contention that any attack on the Dalgren Report is rebuttal is erroneous. In his rebuttal, Mr. Kessler could properly address Dr. Siegman's opinions about the Dalgren report, but he could not make new challenges to the report that did not relate to Dr. Siegman's opinions. Mr. Kessler's experiment did

not address any particular opinion in Dr. Siegman's report. Rather, the experiment was a new means to support Mr. Kessler's original opinion that the Dalgren Report was flawed. This flaw should have been included among the ten flaws that Mr. Kessler identified in his original report.

Plaintiff's contention that Mr. Kessler began work on the experiment after receiving Dr. Siegman's report is not supported by the record and in any event would not change this analysis. Plaintiff's contention runs contrary to plaintiff's previous representation to this Court that Mr. Kessler's addendum "merely provided quantitative results obtained in laser experiments begun prior to the submission of, and referenced in, the original report." Dkt. No. 67 at 2. The contention also conflicts with Mr. Kessler's own deposition testimony which indicates that he began the experiment before receiving Dr. Siegman's report. Dkt. No. 94, Ex. 11. And plaintiff presents no evidence to the contrary beyond the bare assertions in his pleading. All evidence in the record indicates that Mr. Kessler began the experiment before receiving Dr. Siegman's report and could not have performed the experiment "solely to contradict or rebut" Dr. Seigman's testimony as required by Rule 26.

Mr. Kessler did not finish his experiment before the deadline set by Rule 26 and instead attempted to submit the results under the guise of rebuttal testimony one week before trial. Mr. Kessler's tardy disclosure left defendants one week rather than one month to develop a response to the new experiment. The tactic was highly prejudicial to defendants and could not be allowed.

### F. Plaintiff's remaining contentions do not warrant a new trial.

Plaintiff's contentions regarding the conduct and demeanor of this Court are bizarre and without merit. Plaintiff's claim that a discussion between this Court's staff and an Assistant United States Attorney constituted an improper *ex. parte* contact is without merit because the United States was not a party to the case. Moreover, that discussion consisted solely of the AUSA informing the Court that he would be present at the trial. Plaintiff's suggestion that this discussion "poisoned the well" by biasing this Court is baseless.

Equally fantastic is plaintiff's contention that the jury was influenced by the fact that this Court hosted a delegation of Russian judges as part of a sister court exchange. As plaintiff is well aware, this Court arranged to host the judges long before this trial was placed on the Court's calendar. Plaintiff did not object at trial to the fact that this Court hosted the judges; only to the prospect of the judges' presence in the courtroom. Despite this Court's view that the judges' presence could not possibly prejudice the jury, this Court nonetheless did not permit the Russian judges in the courtroom. Even though it is beyond far-fetched that the knowledge of the judges' visit to Seattle could have influenced the jury, the Court clarifies for the record that the jurors had no knowledge of the visit.

Plaintiff also objects to the fact that this Court told counsel that a dome on the Kapitan Man did not appear to be spy equipment as plaintiff asserted, but was in fact a type of antenna cover widely used on civilian watercraft. The objection is meritless because this discussion took place at a sidebar conference and could not have influenced the jury.

### G. Plaintiff's supplement to his motion for new trial does not justify a new trial.

On December 12, plaintiff filed a supplement to his motion for new trial. The

motion sets out a new assignment of error not described in plaintiff's motion for new trial. At trial, this Court sustained defendants' objection to plaintiff's testimony about the contents of a book entitled *Betrayal: How the Clinton Administration Undermined National Security*. Plaintiff now argues that the testimony would not have been hearsay because it was offered not for its truth but to show the basis of plaintiff's view that the Clinton administration had committed treason and to counter the impression that plaintiff was an extremist.

This claim of error must be rejected for three reasons. First, the pleading is untimely under Fed.R.Civ.P. 59(b). That rule requires that a motion for new trial be filed within ten days of entry of judgment. Because this "supplement" is equivalent to a second motion for new trial, and because plaintiff filed the motion nearly two months after the entry of judgment, the supplement must be stricken as untimely.

The arguments set out in the supplement must be rejected for the additional reason that plaintiff's counsel did not offer this rationale for admitting the testimony at trial. In fact, plaintiff's counsel made no response to either defendants' objection to the testimony or to this Court's ruling sustaining the objection. Trial Transcript at 273–4. Finally, the claim must be rejected because plaintiff made no offer of proof as to what plaintiff's testimony would have been had this Court permitted the testimony. Fed R. Evid. 103(a)(2).

## IV. Conclusion

Plaintiff's motion for new trial is DENIED.