**Hugh BRYSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14859.**

United States Court of Appeals
Ninth Circuit.

Nov. 30, 1956.

See also 223 F.2d 775.

Gladstein, Andersen, Leonard & Sibbett, Norman Leonard, Richard Gladstein, George R. Anderson, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Robert H. Schnacke, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, Circuit Judge, and HAMLIN and SOLOMON, District Judges.

SOLOMON, District Judge.

Hugh Bryson, president of the National Union of Marine Cooks and Stewards, was tried on two counts of an indictment which charged that he filed with the National Labor Relations Board "an affidavit of a non-Communist union officer," in which he falsely alleged that he was "not a member of the Communist Party or affiliated with such Party." He was charged with falsely denying membership in the first count and affiliation in the second count, all in violation of § 1001, Title 18, United States Code. The jury acquitted him on the membership count but found him guilty on the affiliation count. From a judgment of conviction and a sentence of five years imprisonment plus a $10,000 fine, Bryson appeals.

As early as 1937, Bryson was an active and militant member of both the Communist Party and the Marine Cooks and Stewards. He frequently caucused with other Communist members of the union for the purpose of influencing the union's meetings, elections and policies. Thereafter, and particularly between 1941 and 1947, the evidence showed that Bryson attended many Communist Party meetings. He solicited new members and participated in the expulsion of old ones. He was a member of the county and state committees of the Party. He acted as chairman of some meetings and gave "educational" talks at others. In one of these talks to new members he stated, "When you are in the Commu-

nist Party you accept discipline. You ask no questions. * * * [[f]or the good of the party you carry out any order that is given to you from the top fraction and you ask no questions."

Bryson's rise in his union was rapid. In 1937, he was a rank and file member of the San Francisco local; in 1947, he became national president of the union.

By 1947, Communist domination of labor unions was recognized as a national problem; for communists in great numbers had infiltrated union organizations not for proper and legitimate union objectives, but for the purpose of engaging in obstructive strikes called by the Communist Party often to support policies of a foreign government.[1] Congress, in an effort to rid unions of communist domination, enacted § 9(h) of the Labor Management Relations Act, 1947, 61 Stat. 136, 146, 29 U.S.C.A. §§ 141, 159 (h), popularly called the Taft-Hartley Act. § 9(h) provides that no representation cases and no unfair labor charges may be asserted by unions before the National Labor Relations Board until and unless each of their officers file with the Board affidavits that they are not members of or affiliated with the Communist Party or any other organization that believes in or teaches the overthrow of the United States Government by force or by any illegal or unconstitutional methods. § 1001 of Title 18, which provides penalties for false statements, was made applicable to such affidavits.

The Communist Party was concerned over the effect that this law would have on its influence in labor unions. At a meeting held in San Francisco during the summer of 1947 to discuss this problem, Leonard Kaplan, the trade union director of the Communist Party, who presided at the meeting, announced that it would be Party policy for Party members in labor unions to boycott the Taft-Hartley Act for the present, but if rival unions

1. For a discussion of the reasons which motivated Congress in enacting the legislation, see American Communications Ass'n, C.I.O. v. Douds, 1950, 339 U.S. 382, particularly at pages 388-389, 70 S.Ct. 674, at pages 678-679, 94 L.Ed. 925.

should raid their membership or involve them in jurisdictional disputes, they would resign from the Party in name only but remain in close touch and alliance with the Party. He further stated, "The Communist Party has spent many years in building and training leadership for the more progressive unions on the West Coast and they were not going to sacrifice that overnight by complying with the Taft-Hartley Act."

Bryson stated in reply that he did not see any need to comply with the Act for the present but that an impending struggle between his union and the rival Sailor's Union of the Pacific might make it necessary to file an affidavit at a later time.

Although there was no evidence of Bryson's attendance at Communist Party meetings subsequent to 1947, Clarence Ward, a member of Bryson's union, testified that Bryson urged him to go to Georgia and get signatures for the Progressive Party. He told Ward that the "Progressive Party isn't the Communist Party, but they have a program—the best program and we want to work hand in hand with them." Bryson offered to do things for Ward if he helped the Communist Party get Wallace on the ballot.

Ward also testified that in 1949 he was in an argument with Bryson over whether he would be seated at the union convention and whether he would get his expenses. Bryson told him that he had been given an opportunity to join the Communist Party but instead continued to fight the Party.

In the years following the enactment of the Taft-Hartley Act, unions whose officers had signed non-Communist affidavits attempted to take over the membership and job areas of non-qualifying unions. The Marine Cooks and Stewards was being harassed by other unions, particularly by the National Maritime Union. In this effort the other unions were aided by dissatisfied members of the Marine Cooks and Stewards. In April, 1951, and during the course of these struggles, Bryson and the other

officers of the union, in order to be able to use the machinery of the National Labor Relations Board to protect the union against these attacks, swore that they were neither members of nor affiliated with the Communist Party.

In July, 1951, John Tiernan was being tried by the Marine Cooks and Stewards on the ground that he was guilty of dual unionism. After the trial and while he was arguing with Bryson, Tiernan said, "The American people are getting sick and tired of the Communist Party and their carryings-on in unions." To this Bryson replied, "If you are referring to me, I'm still a Communist and proud of it."

In the same month, two other union members, Stewart and Whitelaw, came to Bryson's office to ask for job assignment slips. Both of them had been assisting a rival union. As they were waiting to enter Bryson's office, they heard Bryson telephone for assignment slips for two other men who were in his office. However, when Stewart and Whitelaw asked for assignment slips, Bryson told them that he did not issue them. Stewart then called Bryson's attention to the fact that he had just arranged for assignment slips for the other men. When Whitelaw asked what a man had to do to get his job back, Stewart said, "Yes, belong to the Communist Party?" Bryson answered, "That might help." Stewart testified that he then said to Bryson, "Now comes the $64 question, Hugh. Tell me, are you a member of the Communist Party?" To this Bryson answered, "Yes, and I'm proud of it."

In his defense Bryson called 16 witnesses. They testified that Bryson's reputation for truth and veracity was good and that the reputations of the prosecution's witnesses, many of whom harbored deep animosity towards Bryson, were bad. They contradicted witnesses who had placed Bryson at particular Communist Party meetings and who had claimed that Bryson made admissions that he was a member of the Communist Party.

Bryson did not testify.

Bryson's first and principal contention is that the evidence is insufficient to support the jury's verdict that he was affiliated with the Communist Party at the time he filed his non-Communist affidavit.

Before considering that question, we shall first examine his objections to specific portions of the evidence to determine which evidence was properly admitted.

Bryson asks us to disregard as inadmissible hearsay, Leonard Kaplan's statements of Communist Party policy towards the non-Communist affidavit provision of the Taft-Hartley Act made at the Party meeting held in San Francisco in 1947.

■ These statements were properly admitted on the theory of "testimonial completeness." Bryson's reply to Kaplan becomes understandable only in the light of the statements to which he was replying. Here the principal fact was Bryson's intention as expressed in his reply. Other facts which were necessary to place the principal fact in its true light and which were part of the same transaction were admissible. Beaver v. Taylor, 1863, 1 Wall. 637, 68 U.S. 637, 17 L.Ed. 601.

■ Irrespective of Bryson's reply, the Government was entitled to prove that it was Communist Party policy for its labor union members to assume a clandestine relationship to the Party in the event it became necessary for them to file non-Communist affidavits. The relevance of this Party policy is manifest. Even apart from its acceptance by Bryson when it was announced at the San Francisco meeting, his proven knowledge of the policy and his strict and unquestioning obedience to Party directive would tend to show that he did comply with this policy. This, in turn, would tend to explain the absence of evidence of Bryson's active participation in Party functions after 1947, a deficiency which otherwise might be taken to indicate that

Bryson had severed his connections with the Party. In fact, it is apparent from this and similar cases [2] that the Party adopted this policy precisely for the purpose of making it difficult to prove the falsity of non-Communist affidavits executed by Party members.

■ This method of proof, whereby the commission of future acts is inferred from an earlier intent to perform those acts, was sanctioned in the much-cited case of Mutual Life Insurance Co. of New York v. Hillmon, 1892, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. Under the rule in that case, proof of intent may be made through declarations and expressions which tend to show present intent, as an exception to the hearsay rule. See also Mattox v. News Syndicate Co., 2 Cir., 1949, 176 F.2d 897, 12 A.L.R.2d 988.

■ The policy of an organization, like the intent of an individual, can only be inferred from the acts and declarations which manifest it. We think that the Hillmon state-of-mind exception to the hearsay rule applies to organizations as well as to individuals, and that the policy of an organization, if relevant, may be proved through the declarations of its spokesmen. Leonard Kaplan, the trade union director of the Communist Party, was such a spokesman.

The Government must establish Bryson's affiliation with the Communist Party as of April, 1951, the date of the affidavit. Although there is substantial evidence of Communist affiliation during earlier periods, the two admissions in July, 1951, are the only proved manifestations that the relationship existed beyond 1949. Bryson addresses three objections to the consideration of this important testimony.

He first contends that the testimony is not credible. He points out that the witnesses to these admissions were his bitter enemies, and he argues that their testimony that he admitted Communist membership to them, within three months

2. Fisher v. United States, 9 Cir., 1956, 231 F.2d 99; Jencks v. United States, 5 Cir., 1955, 226 F.2d 540; Hupman v. United States, 6 Cir., 1955, 219 F.2d 243.

after filing with the National Labor Relations Board an affidavit to the contrary, is inherently incredible. He also points out that they did not mention these admissions when they testified about these conversations in prior hearings. Neither did they mention them to the National Maritime Union official for whom they were attempting to enlist members of Bryson's union, even though such information would have been of great value against Bryson and his union.

 It was for the jury to evaluate these credibility factors in determining the value of the evidence. Findings of fact by a judge may be reversed where clearly erroneous,[3] but appellate review of jury verdicts has long been limited to the legal sufficiency of the evidence to support the verdict. The weight of the evidence, including all factors of credibility which do not render the testimony incredible as a matter of law is beyond the scope of appellate review of jury verdicts. Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057; Humes v. United States, 1898, 170 U.S. 210, 18 S.Ct. 602, 42 L.Ed. 1011; France v. United States, 1897, 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595. We are unable to reject the challenged testimony on this ground.

Bryson's next ground of attack on the two 1951 admissions is that they were not corroborated by independent evidence. He contends that admissions made subsequent to the commission of the alleged offense must be corroborated.

The requirement for corroboration of admissions by an accused was recently examined by the Supreme Court in Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, and in Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. These decisions extended to admissions the same corroboration requirements which traditionally have applied to confessions. Although both these cases were decided on the same day, they apparently disagree on whether corroboration is required for all admissions which are made subsequent to the commission of the alleged offense. The Opper case appears to hold that all admissions made after the fact must be corroborated.[4] The Smith case suggests that corroboration may not be required in cases other than those in which the admission is made after the fact to an investigating agent on a fact crucial to the Government's case.[5]

 The admissions in the present case fall within this area of doubt because they were made after the fact but not to an investigating agent. However, we are not required to decide whether these admissions could stand without corroboration because the record does contain adequate corroborating evidence.

 The Opper and Smith decisions agree that where corroboration is required, the corroborating evidence need not independently establish the admitted facts. It is sufficient "if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged." Smith v. United States, supra, 348 U.S. at page 156, 75 S.Ct. at page 199.

 The reliability of Bryson's admissions in July, 1951, that he was a Communist is greatly increased by the evidence of his active membership and leadership in the Party from 1937 to 1947, the Party policy adopted in 1947 whereby union leaders would drop open ties with the Party so that they could comply with the Taft-Hartley Act while remaining in close touch and alliance with the Party, and Bryson's statements and activities in 1948 and 1949 indicating that he was still working for the Party.[6]

3. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

4. 348 U.S. 84, 90, 75 S.Ct. 158.

5. 348 U.S. 147, 155, 75 S.Ct. 194, Footnote 3.

6. Statements made in 1948 and 1949 by Bryson, if they constitute admissions, require no corroboration because they were made before the fact. Warszower v. United States, 1941, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876.

This evidence is adequate corroboration for the admissions of Communist Party membership in 1951 within the rule set out in Opper and Smith.

Bryson's last objection is that the admissions made in 1951 have no probative value and must be disregarded because these admissions, if believed, established membership, and since the jury acquitted him on the membership count they demonstrated their disbelief in this testimony.

 The law does not support this contention. A verdict on one count of an indictment cannot have the effect of determining factual issues under another count, even though the same evidence is offered in support of both counts. The legal sufficiency of the evidence to support each verdict must be determined without reference to the other. Dunn v. United States, 1932, 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356. Thus the verdict of the jury acquitting Bryson of the charge of falsely denying membership in the Party does not require us to disregard these admissions of membership in determining the sufficiency of the evidence to support the conviction dealing with affiliation.

 Having disposed of these objections to specific portions of the evidence, we now turn to the sufficiency of the evidence to sustain the verdict as a matter of law. There is no question about the execution and filing of the affidavit. Our problems lie in the proof of its falsity. We have already detailed the evidence of Bryson's membership and activities in the Party, the leadership which he exercised, his knowledge of the Communist Party policy towards the non-Communist affidavit provisions of the Taft-Hartley Act, his strong belief and obedience to Communist Party directives, and his admissions of Party membership and activities both before and after the dates upon which the affidavit was executed and filed. Although the affidavit was executed two years after and three months before the nearest evidence of Bryson's relationship to the Party, we believe that the evidence as a whole was sufficient to warrant the jury's inference that the relationship continued throughout this interval and existed at the time he executed and filed the non-Communist affidavit.

As we have already pointed out, the absence of evidence of Bryson's active participation in Party functions after 1947 is explained by Party policy which required their union leader members to avoid open participation in Party affairs. Under these circumstances, the evidence of Bryson's manifestations of Party membership and activity in 1948, 1949 and 1951, although infrequent, were sufficient to justify the inference that the relationship continued throughout this period.

At the oral argument, Bryson suggested that affiliation could only be proved by overt acts showing his adherence to the illegal and illicit objectives of the Communist Party and could not be proved by mere membership in the Party. For this contention he relies on certain language in Bridges v. Wixon, 1945, 326 U.S. 135, 143, 65 S.Ct. 1443, 1448, 89 L.Ed. 2103.[7]

 Can a person who is proved to have been a member of the Communist Party successfully claim that he was not affiliated with it? To the layman this suggestion would be absurd. The law does not require a different result. The Wixon case stated that the term "affiliation" imports less than membership but more than sympathy. Accordingly, proof of membership would establish affiliation a fortiori. Although in the Wixon case an immigration statute was being construed, we believe that this reasoning is equally applicable here.

7. " * * * Whether intermittent or repeated the act or acts tending to prove 'affiliation' must be of that quality which indicates an adherence to or a furtherance of the purposes or objectives of the proscribed organization as distinguished from mere cooperation with it in lawful activities. The act or acts must evidence a working alliance to bring the program to fruition."

Bryson's next assignment of error concerns the charge to the jury on the proof necessary to establish affiliation.[8] Bryson contends that the court erred in failing to instruct the jury that proof of affiliation must show an adherence to or furtherance of the purposes and objectives of the Communist Party as distinguished from mere cooperation with it in lawful activities.

▇▇▇ An instruction to this effect would have been a correct statement of the law.[9] However, Bryson did not request such an instruction or any other instruction on affiliation at the trial stage even when the jurors interrupted their deliberations to request clarification on the definition of affiliation. Under Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C., Bryson's failure to object to the omission of this instruction at the trial level precludes him from raising it on appeal.

▇▇▇ If we are to consider this assignment, we must do so on our own motion under Rule 52(b), Federal Rules of Criminal Procedure, after finding that the omission may have resulted in a miscarriage of justice or denied Bryson a

fair trial.[10] There is no basis for such a finding.

The instructions on the question of affiliation were full and complete. They adequately informed the jury of the meaning of the term and provided an adequate standard for evaluating the evidence. By likening affiliation to membership in everything but name, they benefited Bryson by requiring a higher standard of proof than was required under Bridges v. Wixon, supra, the case upon which Bryson relies. Membership imports adherence to the objectives of the Party, and therefore the instructions as given excluded the possibility that Bryson could be convicted on the affiliation count merely on proof that he cooperated with the Party in lawful activities, the danger which Bryson's present proposal is calculated to prevent.

It is true that the jury requested clarification of these instructions and that the request was denied. However, although the jury was told to renew this request if additional discussion failed to resolve their difficulties, they proceeded to verdict without making any further request.

8. The instructions of the court on affiliation are as follows:

"The verb 'affiliated', as used in the Second Count of the indictment, means a relationship short of and less than membership in the Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party.

"A person may be found to be 'affiliated' with an organization, even though not a member, when there is shown to be a close working alliance or association between him and the organization, together with a mutual understanding or recognition that the organization can rely and depend upon him to cooperate with it, and to work for its benefit, for an indefinite future period upon a fairly permanent basis.

"Briefly stated, affiliation as charged in the Second Count of the indictment, means a relationship which is equivalent or equal to that of membership in all but name.

"I tried to think of some analogy which would make that possibly clearer to you, and the best one I can think of—we have all in our experience probably heard of a man and woman who live together but are not married. They are husband and

wife in everything but name only. You have probably heard that expression. A person to be affiliated with the Communist Party within the meaning of that term as used in the Second Count of the indictment must be a member in every sense and stand in the relationship of a member in every sense but that of the mere technicality of being a member,—in everything but name.

* * * * *

"If you should find from the evidence that the defendant was a member of the Communist Party or affiliated with it during a period of years prior to April 21, 1951, but if you should also find that the evidence does not satisfy you beyond a reasonable doubt that such membership or affiliation continued to and including the 21st day of April, 1951, then it is your duty to acquit the defendant."

9. Bridges v. Wixon, 1945, 326 U.S. 143–144, 65 S.Ct. 1447–1448.

10. Herzog v. United States, 9 Cir., 1956, 235 F.2d 664, 666–667, on rehearing; original opinion 9 Cir., 1955, 226 F.2d 561.

The instructions on affiliation were adequate and certainly not erroneous, particularly in the absence of a timely request by Bryson for further amplification.

In his last specification of error, Bryson claims that the trial court erred in prohibiting communication with members of the jury.

Immediately prior to the receipt of the verdict, the trial judge forbade everyone from communicating with any member of the jury without his permission. Despite this order, a newspaper reporter contacted jurors and reported that at least two of them expressed uncertainty as to the meaning of "affiliation." Based upon this report, Bryson asked to be relieved of the order so that he could interrogate the jurors on this subject. After a hearing, the court denied his application.

There was no impropriety in the court's original order prohibiting communicating with the jurors. In view of the nature and length of the trial and the wide publicity it received, the order was not only proper but was highly desirable.

This and other courts [11] have condemned the practice of interviewing jurors on the course of their deliberations in the jury room. It is incumbent upon the courts to protect jurors from the annoyance and harassment of such conduct. The order by the Honorable William Mathes, the able and experienced trial judge, was designed to accomplish that purpose and was proper.

Although interrogation of jurors may be prohibited as a general rule, it is permitted when there is some indication that grounds for impeachment of their verdict may be disclosed thereby.[12] However, even if Bryson's interrogation had disclosed that the jurors had not understood the meaning of affiliation as it was defined by the court, such testimony could not be used to impeach the verdict since it dealt with a matter which inhered therein. Young v. United States, 10 Cir., 1947, 163 F.2d 187, 188, certiorari denied, 1947, 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355. The denial of Bryson's request to be relieved of the original order was also proper.

Affirmed.

---

11. Northern Pacific Railway Co. v. Mely, 9 Cir., 1954, 219 F.2d 199. 201; Rakes v. United States, 4 Cir., 1948, 169 F.2d 739, 745; see also The American Bar Association Committee on Professional Ethics, Opinion 109, issued March 10, 1934.

12. Mattox v. United States, 1892, 146 U. S. 140, 13 S.Ct. 50, 36 L.Ed. 917.