**David WINTERS, Defendant-Appellant,**

**v.**

**UNITED STATES of America, Plaintiff-Appellee.**

No. 77–1832.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1978.

Decided Aug. 24, 1978.

Certiorari Denied Oct. 30, 1978. See 99 S.Ct. 333.

---

Professor Charles F. Crutchfield, Dale Belock (law student), Notre Dame, Ind., for defendant-appellant.

John S. Leonardo, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and MARSHALL, District Judge.*

BAUER, Circuit Judge.

On May 17, 1977, the appellant David Winters was found guilty of violating federal kidnapping statutes by taking four hostages across state lines in an effort to avoid capture for an attempted armed robbery. More specifically, Winters was convicted of willfully and knowingly transporting in interstate commerce an unconsenting person in violation of 18 U.S.C. § 1201(a) and of using a firearm to commit the offense of kidnapping in violation of 18 U.S.C. § 924(c). From this judgment Winters now appeals.

In his major argument on appeal, Winters contends that the lower court erred in denying his motion for a new trial which was based on the claim of jury misconduct. The issue arose from a series of events that began when juror Albert Douglas made a post-verdict attempt to contact the trial judge in order to "relay certain information about the deliberations in this case." Upon receiving the message (and without knowing the particulars of Douglas's "information"), the judge authorized a Deputy United States Marshal to interview the juror and submit a summation of the interview to the court. In addition, the judge wrote letters to all counsel which advised them that the Marshal would interview Douglas and that a copy of the Marshal's summation would be made available to the parties.

Shortly thereafter, the defendant-appellant filed a motion for a new trial which was based on information disclosed by the Marshal's interview—specifically, Douglas's belief that there had been an improper extraneous influence on the jury's deliberations in the form of three pieces of paper which purported to detail the evidence against Winters and which the foreman had read to the jury. An evidentiary hearing was subsequently held in open court with all counsel present during which Douglas, the Marshal and two other jurors—the foreman, Thomas Simic, and Scott Howat—testified. On the basis of this testimony and other evidence adduced at the hearing, the trial court denied the motion for a new trial.

The guidelines for our review of these proceedings are found in the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In *Remmer*, the jury foreman was contacted during trial by an unknown individual who stated that the foreman could "profit" by returning a verdict that was favorable to the defendant. Upon learning of the incident, the trial judge authorized an FBI agent to interview the

---

* The Hon. Prentice H. Marshall, United States District Court for the Northern District of Illinois, is sitting by designation.

juror, and, without ever apprising the defendant of the episode, concluded from the agent's report that the juror contact had been a harmless prank. When the defendant did finally learn of the incident and filed a motion for a new trial, the judge refused the request for a hearing and denied the motion. In vacating the judgment, the Supreme Court declared that the trial court

> "should not *decide and take final action ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."

347 U.S. at 229–30, 74 S.Ct. at 451 (emphasis supplied).

■ Relying principally on *Remmer*, the appellant makes three arguments which deal with the lower court's disposition of the jury misconduct issue in this case. First, he claims that the trial court violated the standards of *Remmer* by acting *"ex parte"* in authorizing the U.S. Marshal to interview Douglas. What the argument ignores, however, is that the Marshal's interview was only the first stage in a proceeding that eventually culminated in a two day hearing in open court. Indeed, it is quite clear from the record that, far from taking any "final action *ex parte*," the trial court went to considerable lengths to insure (1) that all parties were informed of the incident and (2) that all parties had an opportunity to participate directly in the resolution of the issue.

On this latter point, however, the appellant also claims that the lower court violated *Remmer*'s standards by refusing to permit counsel to question directly the jurors. But the trial judge did invite counsel to submit proposed questions, and, indeed, asked all of the questions that the defendant submitted. We do not find this procedure to be inconsistent with *Remmer*'s requirement that "all interested parties [be] permitted to participate." On the contrary, we see no reason to doubt that the trial court "has power to bring post-verdict interrogation of jurors under his control," *Miller v. United States*, 403 F.2d 77, 82 (2d Cir. 1963), and that the procedure adopted by the court in this case was a proper exercise of such supervisory power.

■ Similarly, we are not persuaded by the appellant's claim that the lower court erred in concluding that there was no evidence of an extrinsic influence on the jury. At the hearing, the foreman Simic testified that he saw no extraneous materials brought into the jury room and that the only papers that he read to the jury (apart from the court's instructions) were notes prepared by the juror Howat. This explanation for the three pieces of paper that Douglas "believed" to be extraneous materials was corroborated by Howat himself who testified that during the jury's deliberations he did indeed take notes on three pieces of paper and give them to the foreman to read. On the basis of this testimony (as well as Howat's notes which were admitted into evidence), we cannot agree that the lower court erred in concluding that there is no convincing evidence of an extraneous influence on the jury's deliberations.

■ Finally, we cannot accept the appellant's claim that the evidence adduced at trial was insufficient to establish either the "interstate" requirement of the kidnapping statute, or a "willful and knowing" participation in the offense. On the first point, a policeman who was taken hostage by the gunman testified that he was quite familiar with the Indiana-Michigan border and that he had "no doubt" that the van in which the party was travelling crossed the Indiana state line. On the second point, the defendant's claim that he had consumed large quantities of drugs and alcohol just prior to the incident and thus did not knowingly participate in the offense was rebutted by other hostages who testified that he was in full control of his faculties. When this testimony and other evidence is viewed in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it is more than sufficient, in our view, to support a finding of guilty.

The judgment of the district court is therefore

AFFIRMED.